**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

TOM BLAKE,
CDCR #T-77278,
Plaintiff,

vs.

J. SAUCEDO, Correctional Officer;
J. HERNANDEZ, Correctional Officer;
DAVID CLAYTON, Medical Doctor,
Defendants.

Case No.: 26-cv-3286-DMS-JLB

**ORDER: GRANTING MOTIONS TO PROCEED IN FORMA PAUPERIS, TO FILE BY MAIL AND TO EXCEED PAGE LIMIT**

**AND**

**SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)**

**[ECF Nos. 2, 3, 4]**

Tom Blake, a state prisoner proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. Blake did not pay the civil filing fee but did file a Motion to Proceed in Forma Pauperis ("IFP"). ECF No. 2. Blake has also filed motions requesting leave to file by mail and exceed the applicable page limit for the Complaint. ECF Nos. 3, 4. In her[1] Complaint, Blake alleges that Defendants violated the Eighth Amendment's prohibition of the infliction of cruel and unusual punishments while she was

[1] Blake refers to herself with the pronoun "she" in her Complaint. The Court will do the same.

incarcerated at Richard J. Donavan State Prison ("RJD"). ECF No. 1 at 2–7. For the reasons set forth below, the Court **GRANTS** Blake's IFP Motion [ECF No. 2], **GRANTS** her Motion for Leave to File Complaint by U.S. Mail [ECF No. 3], **GRANTS** her Motion for Leave to File Excess Pages [ECF No. 4], and **SCREENS** her Complaint 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court finds that Blake adequately alleges Eighth Amendment claims of excessive force against Defendants Saucedo and Hernandez. But to the extent that Blake seeks to make a claim of deliberate indifference to serious medical needs, the Court further finds she fails to state any plausible claim for relief against any of the Defendants. Therefore, the Court **ORDERS** Blake to either file an Amended Complaint that addresses the pleading deficiencies discussed below or a Notice of Intent to Proceed with the Eighth Amendment claims alleged against Defendants Saucedo and Hernandez in her current Complaint.

## I. Motion to Proceed IFP

Anyone instituting a civil action in a district court of the United States must typically pay a filing fee of $405—consisting of a $350 statutory fee plus an additional $55 administrative fee—although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if the plaintiff is granted leave to proceed IFP. *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners." *Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 767 (9th Cir. 2023). Namely, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner 'shall be required to pay the full amount of a filing fee.'" *Id.* (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)). First, prisoners must submit a "certified copy of the[ir] trust fund account statement (or institutional

equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). Next, the Court assesses an initial payment of 20% of the greater of (a) "the average monthly deposits to the prisoner's account" or (b) "the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint." *See* 28 U.S.C. §§ 1915(b)(1) & (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Unless the prisoner has no assets, prisoners who proceed IFP must pay the initial partial assessed fee and whatever balance remains in installments regardless of whether their case is ultimately dismissed. 28 U.S.C. § 1915(b)(1) & (2); *Bruce*, 577 U.S. at 84.

Blake has provided a trust account statement from her current institution, California State Prison, Sacramento ("CSP"), showing she had account balances ranging from $0.00 and $140.86 during the 6-month period preceding the filing of her Complaint, occasional deposits of $49 and $60, and an available balance of $1.92 at the time of filing. (ECF No. 2 at 6.) Based on this showing, the Court **GRANTS** Blake's Motion to Proceed IFP (ECF No. 2), imposes no initial filing fee, and directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") or the Secretary's designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1) and forward them to the Clerk of the Court. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

///

///

///

///

## II. Motions to File by U.S. Mail and Exceed Page Limit

### A. Motion for Leave to File Complaint via U.S. Mail [ECF No. 3]

Blake asks the Court for leave to file her Complaint via the U.S. Mail instead of electronically, as required by GO653. The Court has accepted Blake's Complaint, which it received through the U.S. Mail, *see* ECF No. 1, and therefore **GRANTS** the motion.

### B. Exceed Page Limit [ECF No. 4]

Blake moves for leave to file excess pages beyond the twenty-two page limit as directed by GO653. The Court **GRANTS** the motion. The Court will now screen Blake's Complaint.

## III. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Blake is a prisoner and is proceeding IFP, her Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss Blake's IFP Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rule of Civil Procedure 8 "prescribes the information a plaintiff must provide about the merits of his claim at the outset of litigation." *Berk v. Choy*, 607 U.S.

187, 193 (2026). Together Rules 8 and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Dismissal "under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Valame v. Trump,* 157 F.4th 1172, 1173 (9th Cir. 2025) (per curiam) (citing *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013)).

**B. Blake's Allegations**

On April 23, 2025, Blake was housed in Richard J. Donovan State Prison ("RJD"), where Correctional Officers J. Saucedo and J. Hernandez and Dr. David Clayton are employed. ECF No. 1 at 1–2.

Blake is a 48-year-old transgender person "with several medical and mobility issues." *Id.* at 3. She states that she suffers from "back pain and problems with standing for 5 to 10 minutes without her legs giving out." *Id.* Blake also alleges she "suffers from mental health issues such as sever[e] anxiety, depression, and borderline personality disorder." *Id.*

On the date in question, she resided in cell B-6-139 and had already received a medical order to have "a wheelchair and walker to make sure" she "did not fall and hurt herself." *Id.*

With her wheelchair and walker parked outside her prison cell, Blake "became upset" and covered her cell door and took her hearing aids out due to whispers she started hearing." *Id.* And she started to get "paranoid." *Id.*

Defendant Saucedo "came to her door and started threatening her." *Id.* Blake responded by screaming "go away." *Id.* Saucedo "made more threats" and Defendant Hernandez then "came to Blake's door and made inappropriate comments such as 'you know you like me and I'm cute.'" *Id.* at 4.

Blake was "afraid because she [had] seen these [two] [officers] beat, trick, and assault other inmates. She [k]new they were going to do that to her." *Id.* at 4. Blake "became so frighten[ed]" that "she forced herself to the top bunk to get away from them." *Id.* at 4. Meanwhile, Blake heard "voices [that] told her 'were [sic] going to kill you.'" *Id.* Blake "screamed 'go away' again," "closed her eyes and tried to pray when suddenly the cell door opened and several c/o's wearing helmets and what looked like football gear entered her cell with a shield yelling 'stop resisting' and [she] was on [the] top bunk." *Id.* Blake maintains "she was not resisting." *Id.*

Blake alleges that, at this time, she "knew they were going to beat [her] up like a man." *Id.* Blake "threw [her] toilet rise seat at the shield and yelled 'stop.'" *Id.* Then Blake proceeded to pick up pieces of a "broken cane" that she had "on [her] top bunk," claiming she was "gonna hit [herself] with it to make [her] fear go away when suddenly [she] was pepper sprayed in the face 3 times" with a chemical agent.[2] *Id.* The chemical agent temporarily limited Blake's vision and made it difficult for her to breathe: she "nearly passed out." *Id.*

Blake alleges she felt pain shoot from her back to her legs when Officers Saucedo and Hernandez physically removed her from the top bunk. *Id.* at 4–5. Blake also recalls

---

[2] Pepper spray is a colloquial term for chemical agents authorized for use by CDCR staff in appropriate circumstances. *See* Cal. Code. Regs. tit. 15, § 3268(k) ("Departmentally approved chemical agents include, but are not limited to, the following: oleoresin capsicum (OC), chloroacetophenone (CN), and orthochlorobenzalmalononitrile (CS).").

that she felt like Saucedo and Hernandez "put their nails into [her] arm pits" when they held her up "to force [her] to walk her to B-Lower shower." *Id.* at 5.

Blake then provides the following narrative: "my wheelchair was in front of my cell[;] instead they dragged me fast to rinse off in B-Lower shower. Both of these c/o's were regulars in B-6 and know B-Lower shower only shoots out real hot water but they are corrupt and evil and know that hot water activates pain when [a person is] pepper sprayed." *Id.*

When the officers placed Blake under the hot running water, she "screamed from the pain and yelled 'asshole the water is piping hot!'" *Id.* Saucedo and Hernandez then "dragged [Blake] forcefully to A-Lower shower to rinse off with cold water." *Id.*

When they "put [Blake] in the shower aggressively," she "fell to the ground" and screamed "'I need my wheelchair!'" *Id.* Another correctional officer retrieved the wheelchair and helped her into it. *Id.* at 5–6. Blake continued to feel pain in her back "like something exploded inside of" her. *Id.* at 6.

She asserts that Defendants Saucedo and Hernandez "used unnecessary force even tho[ugh] [she] complied with the[ir] orders." *Id.*

Finally, Blake alleges that, as she was recovering from the use-of-force incident, Defendants Saucedo and Hernandez went "missing" to seek out "Dr. David Clayton to conspire to remove [her] wheelchair and walker from [her] presence." *Id.* She further alleges that Dr. Clayton then "removed [her] wheelchair and walker without examining [her]" and "without calling the doctor who ordered these medical mobility DME's to find out why [she] was given these special mobility DME's." *Id.*[3]

Based on the above allegations, Blake alleges (1) that Saucedo and Hernandez violated her Eighth Amendment right to be free from cruel and unusual punishment by

[3] DME is an acronym for "durable medical equipment." Cal. Code. Regs. tit. 15, § 3999.390(a) ("The Department shall provide Durable Medical Equipment (DME) and medical supplies to patients as medically necessary to ensure patients have equal access to prison services, programs, and activities.").

using excessive force during her cell extraction, and (2) that Dr. Clayton violated her Eighth Amendment protection from deliberate indifference to a serious medical need. *Id.* at 6–7. Blakes seeks compensatory and punitive damages of $2 million. *Id.* at 9.

**C. Discussion**

Section 1983 does not itself create substantive rights but instead provides “a method for vindicating federal rights elsewhere conferred.” *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a § 1983 claim, a plaintiff must show (1) a deprivation of a constitutional or federal statutory right; and (2) that the defendant acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**1. Excessive Force**

In her first claim, Blake alleges that Defendants Saucedo and Hernandez used excessive force when spraying her with a chemical agent, extracting her from her cell, and placing her under very hot water when ostensibly providing her aide after her eyes and respiratory system were irritated by the chemical agent. *See* ECF No. 1 at 3–6. “[O]nly the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.” *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In the context of prison officials who are alleged to have used excessive physical force in violation of the Eighth Amendment, “the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.” *Id.* at 6–7. “There is no legitimate need to use any force against an inmate who is neither violating prison rules nor reasonably believed to pose a security threat.” *Stewart v. Ayala*, No.21-cv-9638-RGK-AS, 2023 WL 2993042, at *2 (C.D. Cal. March 8, 2023) (citing *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991)).

As currently pleaded against Saucedo and Hernandez, Blake’s complaint is sufficient to survive the low threshold set for sua sponte screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). While Blake alleges facts that implicate the need for correctional officer intervention, she maintains that she was not resisting when sprayed with the chemical irritant, forced off the top bunk and forcefully placed under hot water

which made the pain of the irritant more severe; therefore, her Complaint includes a plausible Eighth Amendment excessive force claim against Defendants Saucedo and Hernandez. *Iqbal,* 556 U.S. at 678; *Hudson*, 503 U.S. at 7; *see also Hughes v. Rodriguez*, 31 F.4th 1211, 1222 (9th Cir. 2022) (affirming denial of summary judgment for officers alleged to have beaten and permitted a canine to bite prisoner "after he was fully subdued"); *Duclos v. Smith*, No. 1:24-CV-00515-HBK-PC, 2024 WL 5508219, at *3 (E.D. Cal. June 24, 2024) (finding prisoner who struck so forcefully in the face that he "dropped to the ground immediately," but alleged not to have posed any credible threat to officers simply by "raising [his] hands" and asking what they were doing adequately alleged an Eighth Amendment excessive use of force claim); *Quinones v. Parr*, No. 3:20-CV-00390-MMD-CLB, 2021 WL 8321869, at *3 (D. Nev. Oct. 28, 2021) (finding prisoner's allegations of having been tased and beaten by officers "after they found him sitting against a wall with his legs crossed, hands in the air, and compliant" sufficient to survive screening pursuant to 28 U.S.C. § 1915A).

**2. Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment's prohibition against cruel and unusual punishment mandates that states provide adequate medical care to all of their prisoners. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Id.* at 104. Prisoners serving time pursuant to a criminal judgment may bring deliberate indifference claims against prison officials "under the Eighth Amendment's Cruel and Unusual Punishment Clause . . . ." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016).

In the context of medical care, "to show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendant(s) chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and quotation marks omitted). Deliberate indifference "may appear when

prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (explaining that even gross negligence is insufficient to establish deliberate indifference to serious medical needs). Further, a "difference of opinion between a physician and the prisoner — or between medical professionals — concerning what medical care is appropriate does not amount to deliberate indifference." *Hamby*, 821 F.3d at 1092.

Blake alleges that Defendants Saucedo and Hernandez conspired with Dr. David Clayton to remove or revoke a prior medical directive permitting her use of a permanent wheelchair without an updated medical examination inquiry. ECF No. 1 at 6.

Blake's wheelchair deprivation claims fail to state a plausible claim for relief. At best, Blake posits a correlation between the use of force incident on April 23, 2025, and a subsequent change to her medical equipment directive. But Blake provides virtually no information as to her serious medical need for a permanent wheelchair or any other mobility assistive device and her Complaint contains no further factual content to plausibly suggest Dr. Clayton acted with deliberate indifference to an excessive risk that she would be harmed if her permanent wheelchair directive were discontinued as a result of her April 23, 2025 cell extraction. *See Hamby*, 821 F.3d at 1092. Blake's Complaint falls short of alleging facts amounting to anything beyond a difference of opinion between her and the physician named in her Complaint. *Id.*

Nor does Blake plausibly plead a claim of conspiracy were the Court to construe her wheelchair deprivation claim as one amounting to a civil conspiracy. *See* ECF No. 1 at 2 (indicating that the doctor "conspire[ed] with c/o's to remove DMEs of [Blake] with no exam causing suffering and pain"). "To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to

violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotations and citation omitted). "Such an agreement . . . may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* (internal quotations and citation omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* (internal quotations and citation omitted). "[T]he plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989); *see also Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) ("To state a claim for conspiracy to violate constitutional rights, the plaintiff must state specific facts to support the existence of the claimed conspiracy.") (internal citations omitted).

Here, Blake claims Saucedo and Hernandez went "missing" while she was recovering from her exposure to the chemical agent. ECF No. 1 at 6. But Blake's loss of sight of Saucedo and Hernandez does not support a plausible inference that their absence necessarily equates with some nefarious agreement to deprive Blake of any constitutional right. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient."). Accordingly, Blake's Eighth Amendment deliberate indifference to serious medical needs and purported conspiracy claims are dismissed sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A for failure to state a claim. *Iqbal*, 556 U.S. at 679.

**D. Blake's Options**

Even though Blake's Eighth Amendment wheelchair deprivation and conspiracy claims require dismissal, she may file an Amended Complaint that corrects all the deficiencies of pleading identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

If Blake chooses to file an Amended Complaint, that pleading will be subject to another preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) before the Court determines whether U.S. Marshal Service upon any Defendant is warranted. If Blake does nothing, the Court will dismiss the case based on her failure to prosecute in compliance with a court order.

## III. CONCLUSION

Thus, for the reasons explained, the Court:

1. **GRANTS** Blake's Motions to Proceed IFP, to File by Mail and to Exceed Page Limits (ECF Nos. 2, 3, 4).

2. **DIRECTS** the Secretary of the CDCR, or the Secretary's designee, to collect the $350 filing fee owed in this case and forward monthly payments from Blake's account to the Clerk of the Court as required by 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** Blake's Eighth Amendment wheelchair deprivation and conspiracy claims against Defendants Saucedo, Hernandez, and Clayton pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

5. **GRANTS** Blake forty-five (45) days' leave from the date of this Order in which to either: (A) file a Notice of Intent to Proceed with her excessive force claims against Defendants Saucedo and Hernandez only; ***or*** (B) file an Amended Complaint that corrects all the deficiencies of pleading identified in this Order.

If Blake chooses to file an Amended Complaint correcting all the deficiencies outlined in this Order, her Amended Complaint must be complete in itself, without reference to the original pleading. Any claims not re-alleged in the Amended Complaint will be considered waived. *See Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting claims dismissed with leave to amend which are not re-alleged in an

amended pleading may be "considered waived if not repled").

If Blake instead files a Notice of Intent to Proceed against Saucedo and Hernandez only, the Court will dismiss Dr. Clayton as a party to this case and direct the U.S. Marshal to effect service of process upon Saucedo and Hernandez only pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3). If Blake fails to file an Amended Complaint or a Notice of Intent to Proceed within the time provided, the Court will enter a final Order dismissing this civil action based both on Blake's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and her failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: August 3, 2026

Hon. Dana M. Sabraw
United States District Judge